IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs May 30, 2019

## STATE OF TENNESSEE v. JOSHUA MICHAEL WARD

**Appeal from the Criminal Court for Scott County**
**No. 11370     E. Shayne Sexton, Judge**

_____

### No. E2018-01781-CCA-R3-CD

_____

The Defendant, Joshua Michael Ward, entered a guilty plea to reckless homicide, a Class D felony, after the all-terrain vehicle ("ATV") he was driving ran down an embankment, killing his passenger. The trial court denied the Defendant judicial diversion and sentenced him to three years, with ninety days to be served in confinement and the remainder on unsupervised probation. The Defendant appeals the denial of judicial diversion and the denial of full probation. We conclude that the trial court did not abuse its discretion in sentencing, and we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

James A.H. Bell, Jacob Feuer, and Chelsea Harris, Knoxville, Tennessee, for the Appellant, Joshua Michael Ward.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Jared R. Effler, District Attorney General; and David Pollard, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

The Defendant's ATV ran over the side of a road and tumbled down a steep embankment, and the victim, Ms. Danielle Stahley, was killed when her seat was ejected from the vehicle. The Defendant entered a guilty plea to reckless homicide. The parties

did not have an agreement as to the sentence that would be imposed, but they entered into a stipulation regarding the factual basis for the plea.[1]

According to the stipulation, the accident occurred at 7:35 p.m. on May 27, 2016, as the Defendant was driving the ATV with the victim in the passenger's seat. The victim's father was following in a separate vehicle. At the time of the accident, the Defendant was negotiating a left curve and "moving over [to] the right passing other vehicles." The Defendant was attempting to avoid a collision with an oncoming vehicle when the ATV's passenger's side tires went over the edge of the road. The ATV rolled over multiple times as it tumbled down the cliff and eventually came to rest upside down in a river. Both occupants were wearing helmets, but the helmets were not properly fastened. The victim's seat was ejected from the vehicle as it fell down the embankment.

In an interview with law enforcement, the Defendant acknowledged that he had purchased two twelve-packs of beer, which were in the ATV, and that he had consumed five to six beers that day. He stated that he was avoiding oncoming traffic and had seen "everybody else get real close to the side of the dirt road." He was able to unlatch his seatbelt and escape after the vehicle came to a rest under water, and he reentered the vehicle in an effort to assist the victim. After he discovered that the entire passenger's seat had ejected from the ATV, the Defendant found the victim with her father on the embankment, "her face … lodged between … a log and the bank." The Defendant stated that the victim had been driving the ATV during the bulk of the day and that he had begun driving approximately twenty minutes prior to the accident. The victim suffered multiple injuries, and she died from a laceration of the heart and hemorrhage while being transported from the scene.

At the sentencing hearing, the State noted that the Defendant initially was indicted for vehicular homicide by intoxication. The State explained that due to the termination of the trooper involved in the investigation, the issues raised in a motion to suppress which was never litigated, and the trial court's refusal to continue the case for settlement, the indictment was dismissed; and the Defendant pled guilty by criminal information to reckless homicide based on the stipulated facts. The State attempted to introduce a toxicology report, but the Defendant objected that it was outside the stipulated facts, and the State withdrew its motion to introduce the report.

The presentence report reflected that the Defendant was a high school graduate who had an unblemished work history and who owned a successful trucking company. He had no history of drug use or alcohol abuse, had a supportive family, and had no prior criminal record. He spent approximately three hundred days of the year driving a truck

---

[1] The plea hearing is not part of the record on appeal.

for his company but had no prior traffic violations. The risk-needs assessment concluded he was at low risk of reoffending.

The presentence report included statements from the police report, which reflected that the Defendant had told law enforcement at the scene that "he needed to hurt because of what he had done to cause [the victim] to get hurt during the crash." The trooper who responded to the accident indicated in his report that the Defendant showed signs of intoxication, including a strong odor of alcohol, slurred speech, an acknowledgement that he had consumed alcohol in the three hours prior to the accident, difficulty standing, and poor performance on a field sobriety test.

In a written statement for the presentence report, the Defendant summarized the offense as "an accident that involved an ATV that I was driving. While doing so [the victim] was thrown from the passenger seat of my ATV and was struck by the roll cage as we rolled down a cliff approximately 150 feet down into a river. [The victim] did not survive." Asked about sentencing, the Defendant stated, "I feel like this has been a very long process and I am ready to move forward in a way that allows me to continue working and running my trucking company. I love what I do for a living and feel privileged to be able to say that."

The victim's mother and sister submitted victim impact statements asking the court to order incarceration for the Defendant. They emphasized that the accident was the result of driving while intoxicated, and they observed that the victim's death had created a breach in the family because the victim's father and brother viewed the death as an accident rather than a criminal offense. The victim's father submitted a statement asserting that he had retained continuous custody of the victim after his divorce and that the victim's mother had not supported the victim emotionally or financially. He believed the victim's death was a tragic accident caused by a faulty seat in the ATV, and he maintained contact with the Defendant after the victim's death. The victim's brother likewise stated that her death was an accident and that the Defendant did not deserve punishment.

Mr. Shane Cooper, a staff investigator for defense counsel, was the sole witness at the hearing. Mr. Cooper introduced photographs of the accident site taken immediately after the accident, showing no barrier between the road and embankment and a drop of approximately one hundred feet over the side of the ridge. Mr. Cooper also showed more recent photographs which depicted that a guardrail had been installed at the site. The photographs also depicted a cross which the Defendant had placed at the scene of the accident in memory of the victim.

Mr. Cooper testified about a telephone interview that he conducted with the victim's father after the victim's death. During the interview, the victim's father had confirmed that the Defendant was not driving erratically or recklessly at the time of the accident. The victim's father had stated that his own ATV suffered a broken front brake line and that he was accordingly going slowly but still keeping up with the vehicle driven by the Defendant. Mr. Cooper acknowledged that when he asked the victim's father if alcohol had played a role in the incident, the victim's father responded that the Defendant was a conscientious driver but did not directly answer the question. Mr. Cooper also acknowledged that a report noted that the victim's father had himself been consuming alcohol.

The Defendant gave an allocution in which he expressed sympathy for the victim's family and stated, "[N]ot a day goes by that I do not wake up with the weight of [the victim's] death on me." The Defendant also introduced a letter from Mr. James Garland, who wrote that the Defendant had single-handedly created his business transporting rare cars and that he exemplified professionalism and excellence in his work.

The State argued that the Defendant did not comprehend the gravity of the situation and that he should be sentenced to periodic confinement scheduled around his work obligations. The Defendant argued that he should receive judicial diversion and presented several mitigating factors. He noted that the prosecution had introduced no proof on the issue of deterrence, and he referred the court to a filing of statistics from the Tennessee Department of Safety and Homeland Security ("DOS") which he contended indicated that statewide ATV accidents were declining. The DOS report established that there were 19 fatalities involving ATVs in 2014, 6 fatalities in 2015, 15 fatalities in 2016, the year that the accident involving the Defendant occurred, and 8 fatalities in 2017. The report showed 116 ATV crashes in 2013; 124 in 2014; 132 in 2015; 124 in 2016; and 116 in 2017. The State then introduced two newspaper articles for the purpose of demonstrating publicity related to the event. The trial court noted that the press was not present during the sentencing hearing.

In determining whether to grant judicial diversion, the trial court examined the Defendant's amenability to correction primarily in light of the written statement in the presentence report. The trial court noted that the statement about moving forward indicated "that he does not understand the criminality, not just the seriousness but the criminality[,] of the behavior." The court stated, "I don't think that he sees this as a crime against another, and that's troubling." The court also observed, "I'm familiar with this culture and, you know, I — not that that has a whole lot to do with this case other than there is a recklessness in the manner in which many of these — these wrecks occur, and the defendant has pled guilty to reckless homicide." The trial court acknowledged that the Defendant had also stated that he thought frequently about the victim's death, but

concluded "waking up and thinking about this — the circumstances of what happened, that's something of a tender notion; however, it's clear from this [presentence report] the defendant just wants to put this inconvenient truth behind him."

The trial court noted that the Defendant appeared to think the death was an accident rather than the result of recklessness. In examining the circumstances, the court observed that "it was a terrible homicide, but that's not the basis for the denial." The trial court found that the Defendant's complete lack of criminal history, his positive social history of employment, and his lack of physical and mental obstacles weighed in favor of judicial diversion. The trial court noted that judicial diversion would almost always be in the best interest of the accused.

On the issue of deterrence as it related to judicial diversion, the trial court found that "the media accounts may or may not suggest any sort of deterrence" but found that they did indicate interest from the public. The court went on to say,

> this Court has dealt with numerous situations such as this. There is a culture in the ATV world that they're — a lot of bulletproof ideas, and I've seen them over and over and over, but they're not. Whether or not we have loss of life or whether we may have EMT's coming out to take people in, … there is a culture that I hope to goodness to see the end of. And I think the State has shown to — enough evidence that deterrence and what this Court does in this case might have some impact in the behaviors of others.

The trial court denied judicial diversion on the basis that the Defendant's statements failed to acknowledge his culpability, indicating a lack of amenability to correction, and that deterrence also weighed against judicial diversion.

Regarding the length of sentence, the trial court found as enhancement that the injuries suffered by the victim were particularly great. As mitigation, the trial court found that the circumstances of the offense indicated that the Defendant was not motivated by a sustained intent to violate the law but gave the factor little weight. *See* T.C.A. § 40-35-113(11). The trial court also found the Defendant's positive social history was a mitigating factor. *See* T.C.A. § 40-35-113(13). The trial court imposed a three-year sentence.

In determining the manner of service, the trial court noted that the Defendant had no criminal history, was a good candidate for rehabilitation, was likely to abide by the terms of probation, and was not a danger to the public. However, the trial court denied full probation based on a need to avoid depreciating the seriousness of the offense and based on deterrence. Regarding the circumstances of the offense, the trial court stated,

- 5 -

"And enormous and gross and heinous, it was a tragic accident, I mean, from a — or a tragic wreck that — and the victim clearly died a horrible, horrible death." The trial court noted that "this is the second time in a year that I've dealt with outdoor behaviors taking the life of someone." The court noted that the DOS report covered the State of Tennessee as a whole rather than the county and observed, "I've seen enough up in this Court in five counties, two in particular[,] that this type of thing is on the verge of being a major problem." The trial court acknowledged that it was unclear if the public would be informed about the sentence but noted that the public should be aware of the dangers of "that setting." The court sentenced the Defendant to serve ninety days of periodic confinement and the remainder of his three-year sentence on unsupervised probation. The Defendant appeals.

## ANALYSIS

On appeal, the Defendant challenges the trial court's failure to sentence him as an especially mitigated offender, the denial of judicial diversion, and the trial court's denial of full probation. We conclude that the issue regarding offender classification has been waived and that the trial court did not abuse its discretion in denying judicial diversion and imposing a sentence of split confinement.

## I. Especially Mitigated Offender

The Defendant asserts that the trial court erred in failing to sentence him as an especially mitigated offender. In particular, the Defendant observes that the trial court erred in applying the sole enhancement factor. *See State v. James Henry Davis*, No. M1999-02467-CCA-R3-CD, 2000 WL 1130139, at *3 (Tenn. Crim. App. Aug. 2, 2000) ("In a homicide case, the personal injuries inflicted upon the homicide victim are by definition 'particularly great.'"). He argues that the court orally found at least one mitigating factor to apply, should have found others, and failed to indicate the mitigating factors when it completed the written form regarding sentencing findings of fact. The State responds that the classification of the Defendant as an especially mitigated offender is discretionary. We conclude that the challenge to offender classification has been waived by the Defendant's guilty plea and failure to raise the issue at sentencing.

When a defendant has no prior felony convictions and the trial court finds mitigating but no enhancement factors, it "may" sentence the defendant as an especially mitigated offender. T.C.A. § 40-35-109(a)(1), (2). Sentencing a defendant as an especially mitigated offender allows the court to reduce the Range I minimum sentence by ten percent, to reduce the release eligibility date to twenty percent, or both. T.C.A. § 40-35-109(b). The trial court's decision to sentence an offender as an especially

mitigated offender is discretionary. T.C.A. § 40-35-109, Sentencing Comm'n Cmt; *see State v. Braden*, 867 S.W.2d 750, 762 (Tenn. Crim. App. 1993).

The record here reflects that the Defendant's offender classification was never in dispute before the trial court. The plea agreement in the technical record reflects that the Defendant was entering a guilty plea to reckless homicide, a Class D felony, as a Range I offender with a thirty percent release eligibility date and a recommended sentence of two to four years. The plea agreement, accordingly, established the parameters for the length of the Defendant's sentence and his release eligibility. The terms of the agreement precluded a reduction of the release eligibility to twenty percent and identified the recommended range as two to four years. A defendant's knowing and voluntary guilty plea constitutes a waiver of any challenge to offender classification or release eligibility. *Davis v. State*, 313 S.W.3d 751, 760 (Tenn. 2010) (citing *Hoover v. State*, 215 S.W.3d 776, 780 (Tenn. 2007)). Moreover, the Defendant never presented the trial court with the argument that he should be sentenced as an especially mitigated offender. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Because the issue was not raised at sentencing, it is waived.

## II. Judicial Diversion

The Defendant asserts that the trial court did not adequately explain why the factors weighing against judicial diversion outweighed those in favor of diversion. The Defendant alternatively contends that the record lacks any substantial evidence to support the trial court's findings regarding amenability to correction and deterrence. The State responds that the trial court considered and weighed the proper factors and that the record supports its discretionary decision. Because the presumption of reasonableness applies and because the record contains evidence supporting the denial of judicial diversion, we conclude that the Defendant is not entitled to relief.

Judicial diversion is a "'legislative largess'" granted to certain qualified defendants whereby the judgment of guilt is deferred and the defendant is placed on probation. *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014) (quoting *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999)); *see* T.C.A. § 40-35-313(a)(1)(A) (2018). If the defendant is successful in completing the probation assigned as part of judicial diversion, the charges will be dismissed and the defendant may seek expungement. T.C.A. § 40-35-313(a)(2), (b). Upon successful completion, the defendant may be restored "'to the status the person occupied before the arrest or indictment or information.'" *State v. Dycus*, 456 S.W.3d 918, 925 (Tenn. 2015) (quoting T.C.A. § 40-35-313(b)). The statute defines which defendants are qualified to apply for judicial diversion, and the parties here do not

dispute that the Defendant was a qualified to be considered for diversion. *See* T.C.A. § 40-35-313 (a)(1)(B)(i). However, "[t]here is no presumption that a defendant is a favorable candidate for judicial diversion." *Dycus*, 456 S.W.3d at 929.

Like other sentencing decisions, the decision to grant or deny judicial diversion is reviewed for an abuse of discretion. *King*, 432 S.W.3d at 324-25. "Reviewing courts will find an abuse of discretion only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008). Although the deferential standard of review articulated in *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012) applies to the decision to grant or deny judicial diversion, the common law factors which the trial court has long been required to consider in its decision have not been abrogated. *King*, 432 S.W.3d at 326. Accordingly, in determining whether judicial diversion is appropriate, a trial court must consider:

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused.

*State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996) (footnote omitted). In addition to considering these factors, the trial court must weigh them against one another and place an explanation of its ruling on the record. *King*, 432 S.W.3d at 326 (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

"Under the *Bise* standard of review, when the trial court considers the *Parker* and *Electroplating* factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," this court must apply a presumption of reasonableness and uphold the trial court's decision so long as there is any substantial evidence to support the decision. *King*, 432 S.W.3d at 327. Substantial evidence is "'evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *State v. James Nathan Wilkerson*, No. W1999-00978-CCA-R3-CD, 2000 WL 763971, at *2 (Tenn. Crim. App. June 8, 2000) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)); *see State v. Clark*, 452 S.W.3d 268, 280 (Tenn. 2014).

The trial court need not "recite" all of the factors, but the record must reflect that it considered each factor, identified the specific factors applicable to the case, and addressed the relevant factors. *King*, 432 S.W.3d at 327. ""[A] trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration."" *State v. Walter Townsend*, No. W2015-02415-CCA-R3-CD, 2017 WL 1380002, at *2 (Tenn. Crim. App. Apr. 13, 2017) (quoting *State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997)). When the trial court has neglected to consider and weigh the factors, its decision may either be reviewed de novo or remanded for reconsideration by the trial court. *King*, 432 S.W.3d at 327-28.

Although the Defendant contends that the trial court did not adequately weigh the required factors, the record reflects that the trial court considered all of the factors listed in *Parker* and *Electroplating* and made a determination regarding whether each weighed in favor of or against judicial diversion. The trial court ultimately concluded that it would give more weight to the factors weighing against judicial diversion, the Defendant's amenability to correction and the need for deterrence, than to those that weighed in favor of judicial diversion. Accordingly, the presumption of reasonableness applies, and we will uphold the trial court's decision so long as there is any substantial evidence to support the decision. *See King*, 432 S.W.3d at 327.

The Defendant alternatively asserts that there is no substantial evidence in the record to support the conclusion that he was not amenable to correction. He contends that his positive work and social history, absence of drug or alcohol addiction, low risk of reoffending, clean driving record, and the trial court's finding, made in determining probation, that the Defendant was likely to abide by the terms of probation and was not a danger to the public, all demonstrate his amenability to correction. He argues that the statement relied on by the trial court that he wished to "move forward" did not constitute substantial evidence of a lack of amenability to correction.

The trial court found that while the Defendant expressed the "tender notion" that the victim was on his mind daily, his statement in the presentence report indicated that he wanted "to put this inconvenient truth behind him." In particular, the trial court noted that the Defendant never acknowledged the criminality of his conduct and that the victim's death "was an accident in his mind" rather than the result of his reckless conduct. A defendant's unwillingness to accept responsibility may "reflect unfavorably on his amenability to correction." *Electroplating, Inc.*, 990 S.W.2d at 230; *see State v. Daniel T. Maupin*, No. M2016-01483-CCA-R3-CD, 2017 WL 4331053, at *10 (Tenn. Crim. App. Sept. 28, 2017); *State v. Jesse Grant Craven, Tommy Davenport, and Greg Pope*, No. M2010-00516-CCA-R9-CO, 2011 WL 2201141, at *10 (Tenn. Crim. App. May 27, 2011). The failure to admit any wrongdoing or accept any responsibility is a

relevant consideration to the denial of diversion. *Stanton v. State*, 395 S.W.3d 676, 688-89 (Tenn. 2013) (analyzing the denial of pretrial diversion). According to the record, the Defendant consumed alcohol prior to the accident, passed other vehicles, moved over to avoid oncoming traffic, and went over the edge of the narrow road. The record supports the trial court's conclusion that while the Defendant expressed regret at the victim's death, he never acknowledged or expressed remorse regarding his reckless conduct. None of the Defendant's statements include an acknowledgement that the victim's death was anything but a tragic accident. The record contains "evidence which a reasoning mind would accept as sufficient to support" the conclusion that the Defendant's failure to acknowledge the criminality of his conduct reflects on his amenability to correction. *See James Nathan Wilkerson*, 2000 WL 763971, at *2.

The Defendant also argues that the record does not contain substantial evidence supporting the trial court's conclusion that judicial diversion should be denied based on the need for deterrence because the trial court did not consider the DOS report or the newspaper articles. The trial court noted that the DOS report contained statistics for the State of Tennessee as a whole and would not necessarily reflect the need for deterrence within the county. The trial court stated that "the media accounts may or may not suggest any sort of deterrence," but quickly followed by stating that the publicity "certainly shows that there is an interest by the public in these types of things." The court noted, however, that no members of the media were present for sentencing. We conclude that the trial court apparently considered but did not rely on the DOS statistics. The trial court also properly considered that the victim's death had received some media attention, and it noted that this indicated "that there is an interest by the public in these types of things."

The Defendant further suggests that the proof in the record was insufficient under *State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000), to establish a need for deterrence because the DOS report indicated a decline in the offense and the newspaper articles did not show coverage above that in a typical case. When the denial of probation is based solely on deterrence, the record must establish that: "(1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." *Hooper*, 29 S.W.3d at 10. *Hooper* further outlines several factors to be considered in determining "whether a need for deterrence is present and whether incarceration is 'particularly suited' to achieve that goal." *Id.* at 10-12.

We note initially that *Hooper* required these findings about deterrence in the context of probation. Recently, the Tennessee Supreme Court has expressly declined to determine whether the same considerations apply in the context of judicial diversion. In *State v. Hamilton*, the defendant argued that the prosecutor failed to address the *Hooper* factors in the denial of pretrial diversion, and the Tennessee Supreme Court concluded

that, because other factors supported the denial of diversion, "the prosecutor did not err by failing to enumerate the *Hooper* factors, even assuming, without deciding, that *Hooper* applies to the current pretrial diversion statute." 498 S.W.3d 7, 19 n.7 (Tenn. 2016); *but see Hooper*, 29 S.W.3d at 8 n.9 (noting that "deterrence in pre-trial diversion cases is guided by the same considerations as deterrence in probation cases"); *cf. King*, 432 S.W.3d at 327 (noting that the factors to be analyzed for pretrial diversion are identical to those in judicial diversion cases). This court has likewise distinguished *Hooper* on the basis that it involved probation rather than judicial diversion. *See Dylan Ward Hutchins*, 2016 WL 7378803, at \*6 (upholding the denial of judicial diversion when the defendant argued that the trial court did not engage in the proper analysis under *Hooper* but the record reflected the denial was based on several factors including deterrence).

The holding in *Hooper* clarified that additional findings were necessary only when the need for deterrence was the sole basis for incarceration, and this court has rejected the argument that the *Hooper* factors must be addressed in a judicial diversion case when other factors weighed against judicial diversion. *Id.* at \*6-7; *State v. Rosa Emma Honeycutt*, No. E2015-00790-CCA-R3-CD, 2016 WL 5540224, at \*5 (Tenn. Crim. App. Sept. 29, 2016) (analyzing deterrence without relying on the *Hooper* factors); *State v. Jared M. Barnes*, No. E2001-00325-CCA-R3-CD, 2001 WL 1565484, at \*7 (Tenn. Crim. App. Dec. 10, 2001) (concluding that the denial was supported even if the trial court could not consider deterrence for failure of the prosecution to introduce proof on the *Hooper* factors); *see Hooper*, 29 S.W.3d at 13. Because the trial court's denial of judicial diversion was supported by other findings, we likewise do not decide whether *Hooper* applies to a determination regarding judicial diversion.

Ultimately, the trial court relied on the Defendant's lack of amenability to correction, as evinced by his failure to accept responsibility, as well as deterrence in denying judicial diversion. Because the record is not void of any substantial evidence to support the denial of judicial diversion, we conclude that the trial court did not abuse its discretion.

### III. Probation

The Defendant asserts that the trial court erred in denying him full probation because the record does not establish a need for deterrence and because the record does not establish the need to avoid depreciating the seriousness of the offense. The State responds that the trial court made appropriate findings supporting incarceration and properly relied on the DOS report and the newspaper reports. We conclude that, because the trial court relied on multiple bases in denying probation, the heightened standard of review does not apply and the trial court did not abuse its discretion.

- 11 -

This court reviews a decision regarding alternative sentencing under an abuse of discretion standard, accompanied by a presumption of reasonableness when the sentence falls within the appropriate range and reflects that the decision was based on the purposes and principles of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (order) (per curiam). In reviewing for abuse of discretion, an appellate court may not substitute its judgment for that of the trial court. *Id.* at 475.

The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sentencing Comm'n Cmt. Likewise, the Defendant bears the burden of establishing that he is a suitable candidate for probation. T.C.A. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not excluded by statute. T.C.A. § 40-35-303(a). Defendants who have committed the most severe offenses, whose criminal histories evince a clear disregard for the laws and morals of society, and who evince a failure of past efforts at rehabilitation are to receive priority for incarceration. T.C.A. § 40-35-102(5). A standard offender convicted of a Class C, D, or E felony who does not fall into the categories listed above "should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6)(A). The court "shall consider, but is not bound by" this guideline. T.C.A. § 40-35-102(6)(D).

In determining whether incarceration is an appropriate sentence, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1)(A)-(C). Additionally, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(4), (5).

The Tennessee Supreme Court's order in *State v. Sihapanya* indicates that when the denial of alternative sentencing is based solely on a concern regarding depreciating the seriousness of the offense or solely on deterrence, this court must apply a "heightened standard of review." 516 S.W.3d at 476. When alternative sentencing is denied based on the seriousness of the offense, "'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement.'" *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006) (quoting *State v. Grissom*, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997)). When the denial of probation is based solely on deterrence, the record must establish that: "(1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." *Hooper*, 29 S.W.3d at 10. Under *Hooper*, in determining whether the record demonstrates a need for deterrence, the trial court should consider the following factors:

(1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole.

(2) Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior.

(3) Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case.

(4) Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective.

- 13 -

(5) Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.

*State v. Bottoms*, 87 S.W.3d 95, 104 (Tenn. Crim. App. 2001) (citing at *Hooper*, 29 S.W.3d at 10-12). The court need not find that all the factors are present to order incarceration, and may consider other factors so long as they are stated with specificity and supported by the record. *Hooper*, 29 S.W.3d at 12.

In *Sihapanya*, the defendant, who had no criminal record and a positive social history, had been drinking, had stayed up all night, and had caused a fatal accident. 516 S.W.3d at 475. This court found that the trial court did not err in denying judicial diversion but erred in denying probation because there was insufficient evidence in the record to show that the defendant's conduct was aggravated in order to support a need for deterrence or need to avoid depreciating the seriousness of the offense. *State v. Kyto Sihapanya*, No. W2012-00716-CCA-R3-CD, 2013 WL 6001925, at *8 (Tenn. Crim. App. Nov. 8, 2013), *aff'd in part, rev'd in part by State v. Sihapanya*, 516 S.W.3d 473 (Tenn. 2014). The Tennessee Supreme Court reversed the part of the decision related to probation, concluding that because the trial court's denial of probation was based on combining "the need to avoid depreciating the seriousness of the offense with the need for deterrence and the nature and circumstances of the offense," the heightened standards of review in *Trotter* and *Hooper* did not apply. *Sihapanya*, 516 S.W.3d at 476; *see State v. Daniel Edrick Lutrell*, No. W2016-01947-CCA-R3-CD, 2017 WL 2876249, at *1 (Tenn. Crim. App. July 6, 2017) *no perm. app. filed* (upholding denial of probation based on both depreciating the seriousness of the offense and deterrence when the defendant pled guilty to vehicular homicide by reckless conduct after having consumed alcohol and driven at excessive speeds); *see also State v. Kenneth Guthrie*, No. M2017-02441-CCA-R3-CD, 2019 WL 978687, at *5 (Tenn. Crim. App. Feb. 27, 2019), *no perm. app. filed*; *State v. Robin Kathern Burton*, No. E2016-01597-CCA-R3-CD, 2017 WL 3923556, at *3 (Tenn. Crim. App. Sept. 7, 2017), *no perm. app. filed*.

We conclude that, as in *Sihapanya*, the heightened standard of review does not apply because the denial of probation was based on the need to avoid depreciating the seriousness of the offense, the need for deterrence, and the nature and circumstances of the offense. The trial court, examining whether the offense was "enormous and gross and heinous," found that it was a "tragic wreck" and that "the victim clearly died a horrible, horrible death." It also determined that the newspaper articles indicated an interest by the public in the offense.

The record reflects that, although the Defendant ultimately pled guilty to reckless homicide rather than vehicular homicide by intoxication, the Defendant's failure to

maintain his lane and ultimate plunge down the cliff was accompanied by the consumption of alcohol. He acknowledged having consumed five to six beers in the hours prior to the accident, and he placed a large amount of alcohol in the ATV. The presentence report indicates that the trooper who responded observed the Defendant exhibit signs of intoxication. *See State v. Micah Alexander Cates*, No. E2014-01322-CCA-R3-CD, 2015 WL 5679825, at *12 (Tenn. Crim. App. Sept. 28, 2015) (upholding the denial of probation to a defendant convicted of vehicular homicide by intoxication when the trial court found that the accident was horrific, involved alcohol and excessive speed, and that the defendant gave no thought to the consequences of his actions). While the Defendant has certainly demonstrated a positive social history, an absence of criminal history, a low risk of reoffending, and a good potential for rehabilitation, we conclude that the trial court's denial of probation based on depreciating the seriousness of the offense, deterrence, and the circumstances surrounding the offense was not an abuse of discretion but was in keeping with the purposes and principles of sentencing.

## IV. Facts Outside the Record

The Defendant also challenges the trial court's sentencing decisions based on its reliance on facts not in the record. In particular, the Defendant notes the trial court's references to the culture of invulnerability in the "ATV world," its reference to recklessness in the use of ATVs, its mention of another case in which "outdoor behaviors" resulted in a death, and its observation that "this type of thing [was] on the verge of being a major problem" in two counties in which the trial judge presided.

A trial court should not "'assume facts not in the record, base a sentence on extraneous facts, or take judicial notice of facts not available to this court nor included in the record transmitted to this court.'" *State v. Nunley*, 22 S.W.3d 282, 287 (Tenn. Crim. App. 1999) (quoting *State v. Smith*, 735 S.W.2d 859, 864 (Tenn. Crim. App. 1987)) (relying on the fact that appellate courts review sentences de novo as a rationale). This is because "[a] trial court's extrajudicial observations are not the proper basis for sentencing." *State v. Shani Carr*, No. M2002-02261-CCA-R3-CD, 2003 WL 1018142, at *4 (Tenn. Crim. App. Mar. 11, 2003). "In other words, '[i]t matters not what is known to the judge personally if it is not known to him in his official capacity.'" *Vaughn v. Shelby Williams of Tennessee, Inc.*, 813 S.W.2d 132, 133 (Tenn. 1991) (quoting *Galbreath v. Nolan*, 429 S.W.2d 447, 450 (Tenn. Ct. App. 1967)). Furthermore, "the trial court's observation and general reference to the docket cannot serve as a substitute for factual findings containing comparisons to indicate … a need for deterrence." *State v. Fields*, 40 S.W.3d 435, 442 (Tenn. 2001).

A trial court's reliance on facts outside the judicial proceedings may constitute reversible error. *See State v. Henri Brooks*, No. W2015-00833-CCA-R3-CD, 2017 WL

758519, at *16 (Tenn. Crim. App. Feb. 27, 2017) ("Based on the trial court's impermissible and heavy reliance on facts not in evidence, we conclude that the trial court abused its discretion, as the record lacks any substantial evidence to support its findings."); *Vaughn.*, 813 S.W.2d at 133-34 (the trial court's personal, extrajudicial observations played a significant role in its exercise of discretion and warranted reversal).

Nevertheless, in determining whether these errors warrant reversal, we examine whether "the trial court's personal observations played a significant role in the exercise of judicial discretion." *Vaughn*, 813 S.W.2d at 134. Reversal is not warranted when the trial court considers facts in the record and the statutory criteria and when its decision is "consistent with the purposes and principles of sentencing." *Sihapanya*, 516 S.W.3d at 476 ("Although the trial court erroneously relied on a fact not in the record in support of the denial of probation, the court properly considered the statutory criteria as well other facts and circumstances supported by the record."); *see State v. Jackie Darrell Messer*, No. E2011-00156-CCA-R3-CD, 2011 WL 6016887, at *6 (Tenn. Crim. App. Dec. 5, 2011) (upholding the denial of an alternative sentence and applying a presumption of correctness when the trial court made observations not drawn from the evidence but the record as a whole showed that the court considered the purposes and principles of sentencing and properly relied on other evidence). In *State v. Dylan Ward Hutchins*, the defendant argued that the trial court improperly relied on facts outside the record in denying judicial diversion. No. E2016-00187-CCA-R3-CD, 2016 WL 7378803, at *7 (Tenn. Crim. App. Dec. 20, 2016). The court's comments included an observation from the judge's own teaching experience that colleges were attempting to deter the type of crime at issue. *Id.* This court concluded that the decision regarding judicial diversion was supported by substantial evidence aside from any improperly considered by the court. *Id.*; *compare Kalandra Lacy*, 2017 WL 1969764, at *4 (reviewing denial of judicial diversion de novo when the trial court had failed to weigh the factors, had conducted "independent research," and had weighed the research heavily in denying diversion).

In the case at bar, even if we were to conclude that the trial court improperly referenced facts outside the record, the trial court properly also relied on facts in evidence and the purposes and principles of sentencing in making its decision. We note that the trial court followed some of its comments with the observation, "not that that has a whole lot to do with this case." The trial court based its decision to deny judicial diversion on the Defendant's lack of amenability to correction, as evinced by his failure to accept responsibility for the role his recklessness played in the victim's death. The court found that the nature and circumstances of the offense, combined with the need to avoid depreciating the seriousness of the crime and the need for deterrence, warranted a sentence of split confinement. The trial court considered evidence regarding the Defendant's consumption of alcohol, the Defendant's failure to acknowledge that the

offense was more than a tragic accident, and the public's interest in the matter. Accordingly, we determine that even if the trial court's comments were improper, its decision was ultimately based on statutory criteria, proof in the record, and the purposes and principles of sentencing. *See Sihapanya*, 516 S.W.3d at 476. Accordingly, the Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE